No. 36,879
No. 36,880
No. 36,881

City of Fort Scott, *Appellee,* v. Claire Arbuckle, *Appellant.*

(196 P. 2d 217)

Opinion on rehearing filed July 10, 1948.

*Harold M. Slater,* of Topeka, argued the cause, and *Clinton J. Evans,* of Topeka, and *Hayden C. Covington,* of Brooklyn, N. Y., were with him on the briefs for the appellant.

*Ernest E. Blincoe,* city attorney, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: The opinion in this appeal was filed December 6, 1947. (See *City of Fort Scott v. Arbuckle,* 164 Kan. 49, 187 P. 2d 348.)

In it we stated that defendant had waived her right to trial by jury on appeal from police court to district court by going to trial without demanding it. In due time she filed her petition for rehearing. In it she called our attention to an excerpt of the transcript of the record wherein she demanded a jury.

No reference was made to this portion of the transcript in her abstract here. One of her grounds for a new trial was the denial of a jury trial on her appeal. Her motion for a new trial was not printed in her abstract, however. There was no argument as to her right to trial by jury in her main brief in this court. Neither was this included in her specifications of error except one of them was that the court erred in overruling her motion for a new trial. In her reply brief filed the morning the appeal was argued she, for the first time, presented to us the argument that she was entitled to a jury trial on her appeal from police court to the district court. This reply brief was handed to counsel for the city on the day before the case was set for argument. Due to some unfortunate circumstances counsel for the city was not present for the oral argument. No reference was made by counsel for defendant to the denial of a jury in the oral argument. After the petition for a rehearing was filed we obtained the files from the trial court and learned from an examination of the original motion for a new trial that a denial of her right to trial by jury was one of the grounds relied on.

It is doubtful whether she as a matter of right may have her denial of a jury trial decided by us since it was not one of her specifications of error. However, the point is a serious one and we allowed a rehearing upon the sole question of whether defendant was entitled to reversal because the court erred in denying her the right to a trial by jury on the appeal and upon no other question. The rehearing was set and submitted upon oral argument and briefs by both sides at the April session.

Defendant relies on what this court has said largely by way of dicta in some early decisions dealing each time with the actual question of whether the defendant was entitled to a jury as a matter of right in police court.

The first case to which counsel makes reference is *City of Emporia v. Volmer*, 12 Kan. 622. There Volmer had been charged in the police court of Emporia with running a "tippling shop" in violation of an ordinance of the city. In the police court he demanded a jury,

which was denied. He was found guilty and appealed to the district court. In the district court he was tried before a jury and found guilty. A new trial was refused and he was fined $100. One of the errors urged in this court was a jury trial was refused him in police court. We referred to the Laws of 1872, chapter 100, section 83, which authorized summary proceedings in police court. We then stated the only question that could be raised was whether that section was in conflict with the provision in the·bill of rights, which declares that:

"The right of trial by jury shall be inviolate."

We then stated:

"Without attempting to decide as to the extent or limits of this constitutional provision, it is enough for us in this case to decide that, where the summary proceeding, authorized by statute,' is in a municipal court, for the violation of one of the city ordinances, and the defendant may have an appeal, clogged by no unreasonable restrictions, to an appellate court in which he has a right to a trial by jury, this is sufficient, and his constitutional rights are not invaded."

As thus stated, it would appear the court held the defendant was not entitled to a jury in the first instance in police court because if he saw fit to appeal he would have a trial by jury in the district court. It will be noted that such was not a holding that he was entitled to a jury on appeal in district court but rather an assumption that he was. It should be noted that section 90 of chapter 100 of the Laws of 1872 provided that the appeal from police to district court could only be had by the defendant giving a bond for the payment of the fine imposed in police court. We cited among other authorities *State v. Young*, 3 Kan. 445. That case pointed out Topeka was organized under the authority of the territorial legislature; that this legislature had authority to organize cities and that such authority was not inconsistent with the organic act which invested judicial power in the district court, the supreme court, the probate court and justices of the peace. We stated:

"The creation of municipal corporations is certainly a 'rightful subject of legislation.' They are absolutely necessary for the good government of cities and towns, as demonstrated by the history of the world. Their creation for centuries has been regarded as a proper exercise of the legislative power in England; and in the United States no other power rightfully could, or has attempted to, create them. . . . Nor is the creation of municipal courts for·the enforcement of municipal regulations inconsistent with this section, because the exercise of such power on the part of the legislature is not only

conferring judicial power within the meaning of this section, but is exercising authority over a rightful subject of legislation, within the meaning of section twenty-four. This construction does violence to the spirit of neither of the sections referred to, is in accordance with the manifest intention of Congress, and is consistent with immemorial usage." (pp. 448, 449.)

This opinion demonstrates there always has been a distinction between the enforcement of city ordinances and the enforcement of state statutes, the one being within the jurisdiction of municipal courts, usually called police courts, and the other within the jurisdiction of state courts.

At any rate, this subject was again before us in *In re Rolfs, Petitioner*, 30 Kan. 758, 1 Pac. 523. That was a case from Leavenworth. Rolfs had been charged and convicted in the police court of Leavenworth with maintaining a nuisance by having a pigpen in the city limits. In police court he demanded a trial by jury, which was refused. He was tried and found guilty and sentenced to pay a fine. Immediately after the conviction he tendered a bond and demanded an appeal to the district court, which was refused, because his fine was less than ten dollars and the statute in effect at the time provided there could be an appeal to the district court from the police court only where that fine exceeded twenty dollars. The hearing in this court was before Mr. Justice Brewer on a petition for a writ of habeas corpus. Mr. Justice Brewer stated that since the action was one of habeas corpus the inquiry was limited to the question "Was the judgment void, or has it been stayed, superseded, or otherwise spent its force?" He stated that the police court had exclusive jurisdiction over all offenses against the ordinances of the city and had power to punish any such violation by fine or confinement in the city prison or labor on the streets. He pointed out there was no question but that the legislature could delegate to municipal corporations powers to punish a violation of their ordinances. He also stated that the keeping of hogpens could be a nuisance and that it was one of the matters over which the city counsel had a right to make regulations to secure the general health of the city. Justice Brewer then said the question with which he was concerned could be stated as follows:

"The constitution in its bill of rights, section 5, provides that 'the right of trial by jury shall be inviolate'; and section 10, that 'in all prosecutions the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance

of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.' Again, the maintaining of a public nuisance, which is of a character to endanger the public health, is a criminal act, and a prosecution therefor is a prosecution for a criminal offense, and not a proceeding to collect a debt or for the enforcement of a mere municipal regulation, and therefore is to be controlled by the ordinary rules concerning criminal prosecutions. (*Neitzel v. City of Concordia*, 14 Kas. 446.)" (p. 760.)

He pointed out the petitioner had been convicted of a criminal offense and punished in defiance of the constitutional guaranty and asked, "Can such a judgment be sustained? Was he constitutionally entitled to a jury?" He pointed out what we had said in *City of Emporia v. Volmer*, supra, as to the summary trial being sustained if the defendant had an appeal clogged by no unreasonable restrictions to an appellate court in which he had a right to trial by jury. He pointed out that the claim was being made in the case before him that for violation of a city ordinance the defendant could be tried on a summary action without any appeal to a higher court notwithstanding the constitutional guaranty of a public trial by an impartial jury in the district court. Mr. Justice Brewer stated he could not assent to that claim. He pointed out that many constitutions were interpreted to mean that the constitution simply preserved the right to trial by jury in all cases in which it existed prior to the adoption of the constitution and that no right of trial by jury for violation of a city ordinance had existed prior thereto. While he assented to this, he pointed out that our constitution contained the provision that in all prosecutions the accused shall be entitled to a speedy trial by an impartial jury. The opinion then stated:

"I find in the constitution a guaranty of a jury trial *in all prosecutions*. That constitution is the organic law, binding upon legislatures and courts, overriding all conflicting statutes, and is the final rule and measure of rights and powers. That which a legislature may not do directly, it may not do indirectly. It may not deprive a party charged with a criminal act of his constitutional right to have the truth of that charge determined by an impartial jury of the district. It cannot subject a party to trial before a justice of the peace on a criminal charge without a right of trial by jury, either there or on appeal. No more can it authorize a municipal corporation, one of its creations, to punish a party for a criminal matter without in some way securing to him a jury trial. So long therefore as the fundamental law contains the guaranty which it does, I think no party can be subjected to a prosecution for an act of a criminal nature, whether that prosecution be brought by the state directly, or any corporation created by the state, without in some

way and before some tribunal being secured an opportunity of having the truth of that charge inquired into by an impartial jury of the district." (p. 762.)

Mr. Justice Brewer pointed out a distinction between ordinances the violation of which involves nothing of a criminal nature, such as where one is charged with acting as an auctioneer without a license, and said the constitutional guaranty would not be applicable to such.

The net result of this opinion would seem to be that Mr. Justice Brewer in 1883 thought the denial of an appeal to the district court where the defendant could have a trial by jury was a violation of defendant's constitutional personal rights. He ordered petitioner's discharge upon giving an appeal bond. It is worth noticing that he expressed his idea that he was not free from doubt and that he would reserve the entire question for further consideration of the justices in September.

This question was again before us in *State, ex rel., v. City of Topeka,* 36 Kan. 76, 12 Pac. 310. That was an action in quo warranto brought in the name of the state by Charles Curtis, county attorney of Shawnee county, to oust the city of Topeka from the exercise of certain powers. Reference was made to certain constitutional and statutory provisions, such as provision against involuntary servitude, the fourteenth amendment, sections 5 and 10 of our bill of rights; the statutory provision for a uniform and equal rate of taxation; that cities should have the power to regulate the running at large of certain animals; that every city should constitute a separate road district; that the mayor and council were empowered to compel each male resident of the city between certain ages to perform two days' labor upon the roads and streets, or in lieu thereof to pay three dollars a day; that the police judge should have exclusive original jurisdiction to hear and determine all cases for offenses against the ordinances of the city and that in all cases before the police judge an appeal might be taken by the defendant to the district court upon the giving of a bond for appearance and for the payment of the fine and costs of the appeal if it should be determined against him. Reference was made to an ordinance which regulated the keeping of dogs within the city and another ordinance that required labor upon the roads was authorized by statute, to which reference has been made, and providing that a franchise to work or pay was a violation of the ordinance punishable by a fine.

The action by the state sought to oust the city from exercising some of these powers. When the case came on to be heard, however, all parts of it were dismissed except that with reference to the regulation of dogs running at large and the collection of a road or poll tax from certain citizens.

By this time Mr. Justice Brewer was not a member of the court. The opinion was written by Mr. Justice Valentine. Mr. Justice Horton was Chief Justice, and Mr. Justice Johnston was the other associate justice.

The court made short work of the complaints about the ordinance with reference to dogs running at large and of the argument that a poll tax was really involuntary servitude. The court remarked that most of the matters had been treated in the case of *In re Dassler, Petitioner*, 35 Kan. 678, 12 Pac. 130, but stated it wished to add a few words in regard to the right of trial by jury. ,

The court thereupon first stated the constitutional guaranty extended to those cases where the right to trial by jury existed before the adoption of the constitution. It also pointed out it was claimed that under section 10 of the bill of rights:

"In all prosecutions the accused shall be allowed . . . to have . . . a speedy public trial by an impartial jury, . . ."

This would seem to be a reference to the statement Mr. Justice Brewer had made in deciding *In re Rolfs*, supra. The court, however, stated that should such a claim be sustained as to the case being decided, then all summary remedies theretofore given or exercised in unimportant matters and before inferior courts, tribunals, or magistrates had been utterly obliterated and the more tardy, cumbersome and expensive remedy of trial by jury substituted.

The court pointed out the provision that this must be a jury of the county or district in which the offense was alleged to have been committed and said if it was intended to govern prosecutions for violations of city ordinances the provision should have been that defendants should be tried by a jury of the city.

The court then pointed out that plaintiff argued that all prosecutions before police courts or police magistrates would require juries, and stated:

"In our opinion, the words 'all prosecutions,' as used in section 10 of the bill of rights, were intended to mean only all criminal prosecutions for violations of the laws of the state, and were not intended to mean or to include prosecutions for the violation of ordinary city ordinances which have relation only to the local affairs of the city." (p. 87.)

The court pointed out that the same act could be prosecuted as a violation of a city ordinance and also as a violation of a state statute and pointed out that this would not be possible if section 10 should be given the effect argued for because that section also contained the provision against double jeopardy. The court then stated:

"As lending support to the proposition that the words 'all prosecutions,' used in section 10 of the bill of rights were not intended to include prosecutions for violations of city ordinances, but were intended to include only prosecutions for violations of the laws of the state, we would refer to the following cases: . . ." (These authorities not included here.) (p. 88.)

The court then stated:

"Also, for the purposes of this case, we shall assume that if the state should permit cities to pass ordinances attempting to regulate matters not coming within the legitimate scope or purpose of municipal regulation, but coming more properly within the scope and object of state regulation, a person accused of violating such ordinances would have the right to demand a jury trial; for in such a case the prosecutions would to all intents and purposes be state prosecutions, and not merely city prosecutions; and the state could not by indirection do what it could not do directly. In other words, offenses against the public in general must be prosecuted for the public in general, and with a jury, if the defendant demand it; while offenses against the ordinances of a city regulating only city affairs, may be prosecuted for the city and without a jury. Now this case belongs to the latter class of cases." (p. 88.)

It should be noted the statute at that time provided that in order to appeal, bond must be given to pay the fine and costs. (See Laws 1885, ch. 98, sec. 5.)

Again we considered this question in *In re Jahn, Petitioner,* 55 Kan. 694, 41 Pac. 956. There Jahn was found guilty in police court of violating an ordinance which made it unlawful to sell certain intoxicating liquor in smaller amounts than one gallon. He demanded a trial by jury in police court. This was denied and he was found guilty and fined. His appeal bond was fixed at $500. He did not give the bond, but brought an action in habeas corpus in the supreme court. Various questions were raised, among them his claim that he was entitled to a jury in police court. This court said:

"A distinction has always been taken between offenses against mere municipal regulations and those which are made penal by the laws of the state because of their supposed evil consequences to society; the courts holding that the former might be punished summarily by proceedings in the municipal court, while as to the latter the defendant is entitled to a trial by jury." (p. 697.)

After a reference to *Neitzel v. City of Concordia,* 14 Kan. 446, where we held that prosecutions in police court for selling liquor were criminal in their nature, we said:

"The complaint against the petitioner for the sale of intoxicating liquors must, we think, be treated as criminal in its character, and under section 5 of the bill of rights, declaring that 'the right of trial by jury shall be inviolate,' he is entitled to a trial by jury. But it was long ago settled by this court that, where a statute authorizes a trial before a municipal court without a jury for a violation of a city ordinance, and at the same time secures to the defendant an appeal therefrom clogged by no unreasonable restrictions, to an appellate court in which he has a right to a trial by jury, such summary proceeding is not in conflict with said section 5 of the bill of rights." (p. 697.)

We then pointed out that since the appeal statute provided the bond had to be for the payment of the fine the right of appeal provided was clogged by unreasonable restrictions. In support of that conclusion we cited *McInerney v. City of Denver*, 17 Colo. 302. Our order was that upon petitioner giving a bond for his appearance in district court he should be discharged. This opinion would seem to be in conflict with *State, ex rel., v. Topeka*, supra, except that in the former the offense was refusal to work on the city streets and in the latter it was the sale of intoxicating liquor under certain circumstances.

At any rate, we had the question again in *In re Kinsel*, 64 Kan. 1, 67 Pac. 634. In that case the petitioner had been found guilty in police court of violating a city ordinance by maintaining a bawdy house. She demanded a jury trial in police court, which was denied. She filed a petition for a writ of habeas corpus. She argued that keeping a house of ill fame was an offense at common law and that our constitution preserved the right of trial by jury as it existed when the constitution was adopted. This court agreed with this argument, but said:

"At that time, however, persons prosecuted in inferior courts for violations of municipal regulations were not entitled to a jury trial. As was held in *The State, ex rel., v. City of Topeka*, supra, the constitutional provisions do not apply to summary remedies given or exercised before such inferior courts. Prior to the adoption of our constitution such trials were conducted without juries, and it was said 'at common law juries are always composed of twelve men, and such juries have seldom been allowed in courts of special, inferior or limited jurisdiction, such as police courts, justice of the peace or probate courts, or in courts of equity or in reviewing courts.'" (p. 3.)

And after a discussion of a distinction between violations of a public law and violations of ordinances which provide for police or domestic regulation in the interest of order and decency we said:

"The cases are not unanimous on the proposition, but we think it is settled by the great weight of authority that the enforcement of municipal ordinances

without the intervention of a jury does not conflict with the constitutional guaranties securing the right of trial by jury." (p. 4.)

The above appears to have been a sound reason for not allowing the petitioner a jury in police court. Nothing more was needed. This court, however, said further:

"Even if we regard the offense charged as of a criminal nature and the violation of a public law, it cannot be said that the petitioner was in fact denied the right of trial by jury. An appeal was available to the district court, where a formal trial could have been had with a common-law jury. It has been held, as some of the cited cases show, that if an appeal may be had from a conviction at a summary trial, without unreasonable restrictions, to a court of general jurisdiction, where a jury trial may be had, the requirements of the constitution are satisfied. Whatever view may be taken, it cannot be said that the right of appeal of the petitioner was clogged by unreasonable restrictions." (p. 5.)

In *Topeka v. Kersch*, 70 Kan. 840, 79 Pac. 681, the defendant was tried without a jury in police court. On appeal he was again found guilty by a jury. On appeal to this court his conviction was affirmed. In an opinion on rehearing, 70 Kan. 846, 80 Pac. 29, we dealt with his argument that his constitutional rights were denied him when he was refused a jury in police court. We first pointed out that he had a right to appeal by filing an appearance bond. We then distinguished some authorities relied on by petitioner and placed the affirmance of the lower court's judgment on what we held in *In re Kinsel*, supra, about the right to an unclogged appeal.

*Stahl v. Lee*, 71 Kan. 511, 80 Pac. 983, was a replevin action for liquor which had been seized by the chief of police in a raid. The contention was made that the statute conferring authority on cities to provide by ordinance for the seizure and destruction of liquor used in maintaining a nuisance was unconstitutional because of the absence of power in the police court to grant a jury trial. In considering that argument we said:

"In Kansas intoxicating liquor is property, and before it can be ordered destroyed the claimant thereto is entitled to a trial by jury of the question whether it has been used in violation of law. There is no authority for such a trial in the police court, but the act that conferred upon cities the authority to pass and enforce such ordinances provides for an appeal by the claimant of such property, as shown by that portion of section 4 of chapter 232, Laws of 1901, which is quoted in the statement. The provision conferring such authority upon cities is not, for the reason suggested, unconstitutional or void." (p. 519.)

The textbook writers generally make the same statement with reference to the right to appeal.

In 3 McQuillin on Municipal Corporations, 2d ed., p. 881, we find a statement as follows:

"Although the defendant should be compelled to submit to summary trial before the magistrate or police justice, according to the prevailing judicial view, if he is thereafter allowed a jury trial on appeal where the appeal is granted as of course, or the right thereto is unqualified and unfettered, or without unreasonable restrictions, the constitutional right is sufficiently preserved."

The statement in 2 McQuillin on Municipal Corporations, 5th ed., p. 1132, is to about the same general effect.

All this brings us to an examination of the source of the right of trial by jury. Since the Magna Charta the guaranty has been restated many times.

In our federal constitution the 6th amendment, part of what is referred to as our bill of rights, provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed. . . ."

Many years later the founding fathers of our state wrote the Wyandotte constitution. The record speaks of their having debated many questions. There is no record, however, of their having debated the wisdom of securing for us the right of trial by jury. Section 5 of the bill of rights of our state constitution provides, as follows:

"The right of trial by jury shall be inviolate."

Section 10 thereof provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

Many rights besides that of trial by jury are secured to us by that provision.

Antedating granting of the Magna Charta, however, was the relationship that existed between the Crown in England and the cities. The origin of this relationship is lost in the mists of time. When man learned that his welfare, peace and well being would be promoted by living in groups in some spot, later to be called a town

or city, special problems for these units came into being. Of necessity there must be rules and regulations to meet the needs of the particular situations, different from those of general effect throughout the realm. These later were called ordinances and were effective only within the limits of the city as distinguished from statutes effective throughout the realm. From the outset, violations of these ordinances were punished in a summary manner by courts chosen for the particular city. There is no contention that Magna Charta had any bearing on the manner in which the summary courts conducted their affairs. No juries were provided for in them. Then came America and the various constitutions with their many and oft-repeated guaranties of trial by jury.

The foregoing is what courts have reference to when they say these constitutions did not create any new right nor extend an old one. They guaranteed it but only as it existed before the adoption of the particular constitution. Thus the adoption of the constitutions did not affect the power of cities to enforce their ordinances in a summary manner without a jury. (See *In re Rolfs, Petitioner,* supra; *State, ex rel., v. City of Topeka,* supra; *In re Jahn, Petitioner,* supra; *McInerney v. City of Denver,* supra; *In re Kinsel,* supra; *Topeka v. Kersch,* supra; *Stahl v. Lee,* supra; and McQuillin Municipal Corporations, 2 ed., supra.)

In 3 McQuillin on Municipal Corporations, 2 ed., p. 868, we find the following:

"In England, notwithstanding the provision of Magna Charta that no freeman shall be taken, imprisoned or condemned but by lawful judgment of his peers or by the law of the land, it has been the constant course of legislation in that country, for centuries past, to confer summary jurisdiction upon local magistrates and justices of the peace for the trial and conviction of parties for minor police offenses, such as petty assaults and batteries, roguery and vagabondism, public drunkenness, family abandonment, etc. Workhouses and houses of correction, principally occupied by those so convicted, have been maintained, certainly from the days of Queen Elizabeth to the present time, as a part of the police system. Both the jurisdiction and the means of punishment have been deemed essential to the good government and well being of society. In this country there has been no time since the earliest days of the colonies that like summary jurisdiction has not been exercised, sometimes under British statutes, but more generally by virtue of laws passed by the colonial and state legislatures."

It has long been settled that a single act of an individual may be punished as a violation of a city ordinance, of a state law, and of a federal law. Thus it is conceivable that a defendant found haul-

ing liquor in his car on the streets of Topeka could be charged, tried and punished in police court for violating the city ordinance which prohibits such traffic, charged in a state court by the prosecuting attorney of this county with violation of the statute making that an offense, and if it should be made to appear that he brought the liquor into Kansas, prosecuted by the federal government for interstate transportation. Section 10, which guarantees the right of trial by jury, also guarantees against being twice put in jeopardy for the same offense. Should section 10 be held to apply to prosecutions for the violation of a city ordinance then the provision against double jeopardy would forbid the same act being the basis for prosecution of a defendant for the violation of an ordinance in the police court and a statute in state court.

Having settled that a defendant is not entitled to a jury as a matter of constitutional right when he is tried in police court in the first instance, we proceed to consideration of whether he is entitled to one as a matter of right when he appeals his conviction from police court to district court.

Here we encounter at the outset what we have said in the opinions, some of them early ones, on that subject. In all of them the right being considered and decided was the right to a jury in police court. In them we first decided what has already been discussed in this opinion, and held that the constitutional guaranty was only to secure a jury trial as it existed at the time of the adoption of the constitution.

The above is a general rule followed by practically all the courts in the land and would be a sound reason for the opinion in this case. What we said in addition about the appeal to a court where a jury could be had was really only an additional reason for holding that a defendant was not entitled to a jury in police court as a matter of constitutional right. The opinions would have been sound without it.

The above is true of all the Kansas opinions except *In re Jahn, Petitioner,* supra, and *In re Kinsel,* supra. It would seem the effect of the holding in those two opinions is that without the right of appeal to a court where a jury is provided, the trial of a defendant in police court without a jury is an unconstitutional deprivation of a right. Defendant argues that this in effect is a holding that on appeal to the district court from police court a defendant is entitled to a jury as a matter of right.

In view of our holding in the two above cases we have concluded to examine the precise question.

The right of first-class cities to enact ordinances is conferred in several sections of the statute. We are interested in two of them. G. S. 1935, 13-423, confers the power—

"To make all needful police regulations necessary for the preservation of good order and the peace of the city, and to prevent injury to or the destruction of or interference with public or private property."

G. S. 1935, 13-430, confers power—

"To prohibit and suppress tippling shops, saloons, dramshops, clubrooms, opium dens; to restrain, prohibit and suppress houses of prostitution, disreputable houses, games and gambling houses, dance houses, keno rooms, desecrations of the Sabbath day, Sunday theatrical performances of every kind, and all kinds of indecency, and other disorderly practices, disturbance of the peace, assault and battery, and petit larceny, and to provide for the punishment thereof."

The ordinance, with a violation of which defendant was charged, provided as follows:

"Section I. That any person who shall wilfully disquiet or disturb the peace, or quiet, of the City of Fort Scott, Kansas, or of any person, family or neighborhood in said city, by rude or indecent behavior, profane discourse, disorderly conduct, noisy and boisterous talking, or drunkenness, shall be deemed guilty of misdemeanor."

The above ordinance could have been enacted by the governing body of the city under the authority of either of the above statutes.

Disturbance of the peace was a common-law crime. It is also a crime by statute in Kansas. (See G. S. 1935, 21-950.) No doubt such conduct was among the earliest subjects for regulation by cities when men began to live so closely together that one man's conduct was apt to disturb his neighbor. Obviously, too, what would be a disturbance of the peace in the city would not always be so regarded in the country.

G. S. 1935, 13-527, provides for the appointment of a police judge. By G. S. 1935, 13-602, the police court is given exclusive jurisdiction to hear and determine all cases for offenses against the ordinances of the city. G. S. 1935, 13-611, provides for an appeal by the defendant upon the giving of a bond to appear in district court. G. S. 1935, 13-612, provides for the amending of the complaint in district court or the filing of a new complaint. G. S. 1935, 13-424, confers power to punish by fine or imprisonment or both. G. S. 1935, 13-616, provides that in all matters for which specific pro-

vision is not made the chapter for criminal procedure before justices of the peace shall govern except that no jury shall be allowed. A city ordinance may impose a heavier penalty for an offense than a state statute imposes for the same act in violation of a statute. (See *Kansas City v. Henre,* 96 Kan. 794, 153 Pac. 548; *Minneola v. Naylor,* 84 Kan. 147, 113 Pac. 309; and *Stark v. Geiser,* 90 Kan. 504, 135 Pac. 666.) An ordinance is always subject to the test of reasonableness. (See *Crawford v. The City of Topeka,* 51 Kan. 756, 33 Pac. 476; also, *Smith v. Hosford,* 106 Kan. 363, 187 Pac. 685; and *City of Tribune v. Connelly,* 138 Kan. 398, 26 P. 2d 439.)

From its inception a prosecution for violation of a city ordinance is in the hands of the city authorities. The prosecuting attorney is the city attorney. The action is carried on in the name of the city against the defendant, the sentence to confinement is in the city jail. The penalty is fixed by the ordinance. The fine goes to the city treasury and costs, if any, are assessed against the defendant or the city, as the circumstances require. (See *City of Iola v. Harris,* 40 Kan. 629, 20 Pac. 521; *Topeka v. Good,* 9 Kan. A. 258, 59 Pac. 681.)

The district judge while hearing the appeal is substituted for the time being for the police judge. (See *City of Solomon v. Hughes,* 24 Kan. 211, *In re Sanford,* 117 Kan. 750, 232 Pac. 1053; *Smith v. City of Emporia,* 27 Kan. 528; *Watt v. Jones,* 60 Kan. 201, 56 Pac. 16; and *In re Hurston,* 112 Kan. 238, 210 Pac. 495.)

Trial by jury, as a right, arises, as we have demonstrated, from the constitution, either state or federal. If it is not secured to defendant there it does not exist. The fact that she might have been entitled to a jury in justice court under the statute—G. S. 1935, 63-302—had she been charged with disturbing the peace in violation of G. S. 1935, 21-950, has no bearing on the question of whether she was entitled to be tried by jury in police court or on appeal from police court to the district court when she was charged with disturbing the peace in violation of a city ordinance. The incongruity therein is apparent rather than real and is not authority for our holding her to be entitled to such a trial unless it is secured to her by the constitution.

There is a reason for the ancient rule that cities might deal summarily with those charged with the violation of their ordinances apart from rules as to trials for violation of the laws of the realm. For one thing, due to the complexity of city life there are many more acts, the doing of which constitutes a violation of some city

ordinances, than there are that constitute a violation of state statutes. Conduct in cities is and always has been more strictly regulated. That fact is so well recognized this opinion will not be burdened with an enumeration of the examples. As a matter of fact, this case affords a good example. One can hardly imagine a farmer or country resident complaining of his peace being disturbed because the defendant came to his house to discuss religion with him or for any other reason. As we have pointed out in our original opinion, this complainant's conduct became a disturbance of the peace on account of the fact she invaded the privacy of a rooming house where the roomers were entitled to expect to be free from such intrusions at a time when they wanted to sleep or rest. Another reason is that the penalties are usually small compared to the penalties for violation of state statutes. There are cases both ways about whether the violation of a city ordinance is a crime at all. Violations of city ordinances are nothing more than misdemeanors. We shall not endeavor to harmonize those decisions. This charge was for violation of a city ordinance and with such charge we are dealing and with no other. We choose to place our conclusion that defendant was not entitled to a jury in this case squarely upon the fact that when the constitutions were adopted the right of trial by jury was not extended nor given any wider meaning or significance than it had at common law. Unless we realize that, we can never reach a rational answer to the question we are considering. Every authority we have examined holds the defendant was not entitled to a trial by jury in police court. We see no reason, either logically or in the interest of personal liberty, or under the authorities, for holding that there is any difference in the defendant's constitutional rights between those she had when she appeared in police court and those she had when being tried on appeal in district court. Insofar as our holding in *In re Jahn, Petitioner,* supra, and *In re Kinsel,* supra, differs from this conclusion, they are overruled.

The judgment of affirmance is adhered to.

THIELE, J. (dissenting): I dissent from the court's decision and shall state my reasons very briefly.

Shortly after statehood and continuing thereafter this court took the position that in the police court of a city, a trial without a jury could only be justified as not violating articles 5 and 10 of the bill

of rights in our constitution where statutory provision had been made for a free and untrammeled right of appeal to the district court in which court trial by jury could be demanded. Cases so holding are cited in the court's opinion. Now we are saying that trials in the police court are summary proceedings where the defendant is not entitled to a jury, and on appeal to the district court, that court acts only as a police court and defendant is not entitled to a jury. The former rule should be followed.

Disturbance of the peace is an offense denounced by the criminal laws of this state (G. S. 1935, 21-950) as well as an offense denounced by the Fort Scott ordinance. Had the complaint been made in the justice court a jury could have been demanded (G. S. 1935, 63-302) and on appeal to the district court, a jury could have been demanded (G. S. 1935, 62-1401). Under the court's opinion the same complaint filed in the police court gives the defendant no right to trial by jury at any stage. Such a right is thus determined by the venue of the action. In my opinion such an interpretation violates the defendant's constitutional rights.

HOCH, J., joins in the foregoing dissenting opinion.

WEDELL, J., dissents.