Louis W. KNUDSEN, Petitioner,

v.

CITY OF ANCHORAGE, Respondent.

No. 58.

Supreme Court of Alaska.

Dec. 30, 1960.

Robison, McCaskey, Savage & Lewis, by John M. Savage, Anchorage, for petitioner.

Richard O. Gantz, City Atty., Anchorage, for respondent.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

This is a petition to review an order of the Superior Court for the State of Alaska, Third Judicial District, which denied petitioner's motion for trial by jury of an appeal from a conviction of reckless driving under an ordinance of the City of Anchorage, Alaska.[1]

On February 26, 1960, petitioner appeared before a State District Magistrate, holding court on alleged violations of the ordinances of the City of Anchorage and demanded trial by jury on a charge of reckless driving. Petitioner's demand was denied and after trial and conviction of the charge he was sentenced to thirty days in jail, to pay a fine of $300 and to loss of his driver's license for a period of one year. Petitioner then demanded a trial by jury of his appeal to the Superior Court and this motion was denied on June 20, 1960.

This court grants review because the order of the Superior Court judge affects a substantial right of petitioner and is of such substance and importance as to

---

1. Anchorage, Alaska, Code of Ordinances § 19–94 (1957) provides:

"It shall be unlawful for any person to operate a motor vehicle in a reckless manner over and along the public ways, streets, or highways of this city. For the purpose of this section to 'operate in a reckless manner' shall be construed to mean the operation of a vehicle upon the public ways, streets or highways of this city in such a manner as to indicate either willful or wanton disregard for the safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or to be likely to endanger any person or property."

justify deviation from the normal appellate procedure by way of appeal in order that the questions of law be given the immediate attention of this court.[2]

Petitioner's contentions are as follows:

(1) Article I, section 11 of the Alaska Constitution, which became effective on January 3, 1959,[3] grants to all persons charged with having committed a crime the right to trial by jury.

(2) The common law of Alaska, as a territory and even before, granted trial by jury to a defendant accused of the crime of reckless driving, and article I, section 11 of the Alaska Constitution confirms this right.

These contentions will be dealt with in the order stated.

▇▇▇ Article I, section 11 of the Alaska Constitution states in pertinent part: "In all criminal prosecutions, the accused shall have the right to a speedy and public trial * * *." The similarity of this portion of the section to wording in the Sixth Amendment to the United States Constitution is at once apparent. The Sixth Amendment in pertinent part states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." With the exception of the use of the word "have" for "enjoy", the quoted portions are identical. The use of "shall have" by the framers of the Alaska Constitution is interpreted as being no more than an attempt to state more specifically and definitely that the right of the accused is a possessory one and to eliminate any possibility of ambiguity resulting from a present day interpretation of the phrase "shall enjoy". Since the essential wording of the two provisions is identical, the next question is whether the framers of the Alaska Constitution intended that section 11 have the same interpretation and application as the Sixth Amendment.

Notes contained in the records of the Alaska Constitutional Convention show that the Committee on Preamble and Bill of Rights incorporated many of the provisions of the United States Constitution into the Alaska Constitution. Committee commentary on the section now being considered states:

"This section protects the rights of the accused in criminal cases. The legislature may provide for a jury of not more than twelve and not less than six in courts not of record; experience has show this to be adequate protection of the rights of the accused in such courts. It also gives the defendant the opportunity to be released on bail except in capital offenses." [4]

The Convention minutes record certain remarks of the Committee Chairman to the effect that various proposals were considered as well as the Federal Bill of Rights; that in many instances the identical federal wording was used in the Alaska Constitution where the particular provision had "served its purpose well and was suited to the needs of Alaska". In other instances identical wording was used according to the Chairman, because the provisions "apply to Alaska through the interpretation of the Supreme Court". Other provisions were changed "either because of the peculiar conditions of Alaska or because we felt due to conditions changing in the 150 years that we have had the Federal Constitution that some modification should be made."

The Committee Chairman's remarks on the Convention floor concerning the section now before us must be considered in relation to remarks made on a preceding section. Her remarks on both sections are quoted below:

"Section 7 which pertains to grand juries is also different from the Fed-

2. Alaska Sup.Ct.R. 23–24.

3. Exec.Proc. No. 3269, 24 Fed.Reg. 81 (1959), 48 U.S.C.A. note preceding section 21.

4. This and all subsequent quotes and statements concerning proceedings of the Alaska Constitutional Convention refer to Records of Alaska Constitutional Convention, now in the custody of the Secretary of State, Juneau, Alaska.

eral. We preserved the grand jury, but we changed the number of grand jurors from 23 to 12, and we also modified the use of it somewhat. We are not substituting something entirely new but something which has been tried in other states and is found to be more efficient and economical without in any way taking away from any protection which the people have or should have. The same is true of Sections 12 and 13 dealing with the juries in criminal and civil cases. [Section 12 is now section 11 in the Alaska Constitution.] Again we tried to provide a procedure which would protect the right to a jury but still to do it more economically and efficiently without sacrificing any rights of individuals, and again the provisions that we have adopted have been tried and found satisfactory in other jurisdictions."

If the Chairman's remarks concerning economy and efficiency concerned the right given the Legislature in the remaining portion of the first sentence of section 11, to reduce the number of jurors in courts not of record, and we assume they did, then we have only the general remarks on the Bill of Rights to guide us as to the intended meaning and scope of that portion of the sentence now under consideration. Since the wording is identical to that of the Sixth Amendment, so far as we are here concerned, we can only assume that this portion of the Sixth Amendment was one of those referred to as having "served its purpose well" throughout 150 years of use in the United States and its identical language was therefore incorporated into our constitution as a part of section 11 as being "suited to the needs of Alaska."

Persuasive authorities have established that the provisions of the Sixth Amendment must be construed in the light of the common law as it existed in the United States at the time the amendment was adopted. When so construed it becomes apparent that the wording "in all criminal prosecutions" was not intended to secure to the accused the right to trial by jury when charged with a petty offense. The petty offenses which were the exception to this provision were those which could be proceeded against summarily in any court legally constituted for that purpose at the time the United States Constitution was adopted.[5] The particular offenses considered to be petty and subject to summary trial without jury varied somewhat from state to state, but were generally in the nature of police regulations.[6] In determining whether a particular offense should be classed as petty and subject to summary trial or of a more serious nature with a right to trial by jury, United States courts have been guided by the common law at the time of adoption of the United States Constitution. Some state courts have decided that similar state constitutional provisions preserve the right to jury trial to the extent that such rights existed by the laws of the territory when the state constitution was adopted.[7]

We believe that the Alaska Constitutional Convention, in adopting the identical language of the Sixth Amendment, intended that section 11 of article I of the Alaska Constitution be interpreted as securing to an accused such rights to trial by jury as he had been found entitled to under applicable Supreme Court interpretations of the Sixth Amendment. This is consistent with the remarks of the Chairman of the Committee on Preamble and Bill of Rights that in some instances wording identical to that contained in the United States Constitution was used because the provision "had served its purpose well and was suited to the needs of Alaska".

5. Schick v. United States, 1904, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99; Callan v. Wilson, 1888, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223.

6. Frankfurter & Cocoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv.L.Rev. 917, 981 (1926).

7. State v. Ketterer, 1956, 248 Minn. 173, 79 N.W.2d 136.

We hold that it was not the intent of the Alaska Constitutional Convention, in adopting a portion of the wording of the Sixth Amendment, to give to article I, section 11 any broader application than that portion of the Sixth Amendment had been given by the United States Supreme Court. This holding precludes any assumption that article I, section 11 granted or confirmed the right to jury trial for offenses deemed to be petty at common law.[8]

It is true that at the time the Alaska Constitution was adopted an accused had the absolute right to trial by jury in any civil or criminal case in the justices' courts of the Territory. These rights, however, did not grow out of any Federal or Territorial common law, as argued by petitioner. Nor did they arise by reason of any application of the Sixth Amendment to Alaska. They were rights originally conferred by Acts of Congress in 1899 and 1900. Under the Act of 1899 the right to trial by jury in Alaska far exceeded the scope of that right under the Sixth Amendment as interpreted by the United States Supreme Court.[9] In any criminal proceeding initiated by the Territory, which might be punished by fine or imprisonment, the accused had the absolute right, upon demand, to trial by jury. The right to trial by jury in any civil action, regardless of the amount involved, was conferred by the Act of 1900.[10] From the time of enactment of the above mentioned statutes the Territory had no discretion to change them until passage of the Alaska Organic Act in 1912.[11] Thereafter, the power of the Alaska Legislature extended to all rightful subjects not inconsistent with the Constitution and laws of the United States. With respect to the right of trial by jury, the Legislature was circumscribed only by the provisions of the Act of April 7, 1874[12] providing that no party be deprived of the right of trial by jury in cases cognizable at common law. The Territorial Legislature has not detracted from the original rights to trial by jury established by Congress. They remain essentially unchanged to this day and are applicable to proceedings in the State District Magistrate Courts, when exercising jurisdiction similar to the former "justices' courts" mentioned in the statutes.

The fact that the Territorial Legislature has not seen fit to legislate permissible

---

8. Cases cited note 4 supra.

9. Act of March 3, 1899, ch. 429, §§ 410–425, 30 Stat. 1330–1332. Section 410 [now § 69–2–1, ACLA 1949] provides in part:
"That a justice's court has jurisdiction of the following crimes:
"First. Larceny * * *.
"Second. Assault * * *.
"Third. Of any misdemeanor punishable by imprisonment in the county jail, or by fine, or by both."
Section 418 [as amended by ch. 47, SLA 1925, now § 69–3–11, ACLA 1949] provides:
"That upon a plea other than a plea of guilty, if the defendant do not then demand a trial by jury, the justice must proceed to try the issue."
Section 419 [as amended by ch. 23, SLA 1933, now § 69–3–12, ACLA 1949] provides:
"That if a trial by jury be demanded the justice must make an order in writing * * *."

10. Act of June 6, 1900, c. 786, tit. 2, ch. 95, §§ 972–980, 31 Stat. 484–485 [now embodied in § 68–6–6, ACLA 1949]. Section 972 provides in part:
"When a cause is at issue upon a question of fact, if either party then demand a jury trial, and deposit with the justice the trial fee, such issue must be tried by a jury and not the court; but otherwise it must be tried by the court."

11. Act of Aug. 24, 1912, ch. 387, 37 Stat. 512 [in ACLA 1949, vol. 1, pp. 50–66]. This act organized the Territory of Alaska, created a legislature, and in § 9 provided that "the legislative power of the Territory of Alaska shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States * * *."
Section 9 was subsequently amended, but in other respects. See 48 U.S.C.A. § 77.

12. 18 Stat. 27 (1874), 48 U.S.C.A. § 1464 authorizes the use by territories of uniform codes of procedure and as a last proviso states: *"Provided,* That no party has been or shall be deprived of the right of trial by jury in cases cognizable at common law."

changes in the rights established by the original acts of Congress has no significance in interpreting the intended scope of article I, section 11.

The Legislature has had the right to prescribe whether offenses deemed to be petty at common law should be tried summarily or by jury. The only restriction imposed on the Territorial Legislature, after passage of the Organic Act and until Statehood was that contained in the Act of April 7, 1874, preventing it from depriving the right of trial by jury in cases cognizable at common law. This restriction is considered to be identical to that imposed on the Federal Government by the Sixth Amendment and on the State of Alaska since Statehood by article I, section 11.

To hold that the Constitutional Convention intended that article I, section 11 confirm the right to trial by jury in every case in which it was then available and grant the additional right of trial by jury in municipal ordinance violations would be inconsistent with the intent of the Convention. Such a holding would have the effect of incorporating into the constitution by inference, statutory provisions originally imposed upon the Territory by Congress at the turn of the century, long before the Territory had an organized legislature. It would impute to article I, section 11 a far broader interpretation than had ever been given to identical wording in the Sixth Amendment, an interpretation not justified by the records of the Convention. Such a construction would handcuff the State Legislature with restrictions that could be removed only by an amendment to the constitution.

Evidence that the Convention intended to permit a restriction of rather than grant an extension of the right to trial by jury as it then existed is found in the provision of article I, section 11, which gives to the State Legislature the right to reduce the number of jurors to a minimum of six in

courts not of record. The right as it then existed was to a jury of twelve regardless of the nature of the charge.[13] Other evidence of such an intent is found in article I, section 16, which provides:

"In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of record, may provide for a jury of not less than six or more than twelve."

Certainly the right that existed at the time was to trial by jury of twelve regardless of the amount in controversy and any verdict had to be unanimous.

■ We next consider the question of whether the Common Council of Anchorage had the power to provide by ordinance that trials for alleged violations of its ordinances be without a jury.

■ We believe that it had such power. The power of the common councils of cities in Alaska to establish municipal magistrate courts was granted by Congress in 1904.[14] In this act a common council of a city was given the power to appoint a municipal magistrate and to prohibit drunkenness, gambling, houses or places of ill fame, disorderly conduct, conduct endangering the public peace or public health or public safety; to define such offenses; and to prescribe the punishment therefor, not to exceed a fine of one hundred dollars or imprisonment not exceeding ninety days or both. The municipal magistrate was given jurisdiction of all actions for violations of municipal ordinances. Appeal from the magistrate's judgments to the district court was allowed, to be processed in the same manner as appeals from the judgments of ex-officio justices of the peace. No provision was made for trial by jury. Some

13. Rassmussen v. United States, 1905, 197 U.S. 516, 25 S.Ct. 514, 49 L.Ed. 862, 2 Alaska Fed. 365.

14. Act of April 28, 1904, ch. 1778, §§ 4(2), (10), 33 Stat. 530–532 [§ 627(2), (10), CLA 1913].

nineteen years later in 1923 the Territorial Legislature provided:

"The rules of proceeding before a municipal magistrate shall be as near as practicable the same as before a justice of the peace, unless otherwise prescribed by ordinance enacted by the council." [15]

Whether the cities of Alaska interpreted the phrase "rules of proceedings" as including the right to trial by jury is not known. If so, then they obviously construed the phrase "unless otherwise prescribed by ordinance enacted by the council" as permitting them to dispense with jury trial by ordinance. This observation is made because it is a fact that in the past some cities in Alaska have provided for trial by jury in municipal magistrate courts and some have not and this is the state of affairs at the present time. Anchorage is one of the cities which not only did not provide for trial by jury, but provided by ordinance that there should be no trial by jury.[16] We hold that the phrase "rules of proceedings" applied only to practice and procedure and had nothing to do with the right to trial by jury, which is a substantive right.[17]

In 1917 the Territorial Legislature authorized town councils to confer civil jurisdiction on municipal magistrates.[18] This law was repealed and re-enacted in identical form in 1927 [19] and amended in 1955 to increase the civil jurisdiction and to specifically provide that trial be without a jury in such civil proceedings.[20] These changes in the law are mentioned merely to show that the Territorial Legislature at various times over the years did concern

itself with the right to jury trial in municipal magistrate courts, but made no attempt to establish trial by jury as a right in such courts. The essential provisions of the Act of April 28, 1904 remained unchanged and it did not establish trial by jury as a right in such courts.

Since the Act of April 28, 1904 did not require trial by jury of petty offenses within the jurisdiction of a municipal magistrate and no such requirement has been made by the Territorial or State Legislature, common councils were at liberty to follow their own discretion in this respect.

█ Petitioner's second contention is that reckless operation of a motor vehicle, as defined by the Anchorage ordinance, constitutes a crime evil in itself and one which, by its very nature, was serious enough to require trial by jury at common law, and cites District of Columbia v. Colts.[21]

The court was there construing the applicability of article III, section 2, clause 3 of the United States Constitution [22] to the police courts of the District of Columbia in connection with an act of Congress defining the right to trial by jury in such courts and an ordinance of the District of Columbia defining reckless driving. Since the Sixth Amendment is generally construed as being merely a restatement of article III, section 2, clause 3, in terms more reassuring to those who originally opposed acceptance of the United States Constitution,[23] the Colts decision is of interest, although we do not consider it applicable to this case. The court does state that the offense of reckless driving, as defined by District of Columbia ordinance, is in its very nature

---

15. Ch. 97, § 24, SLA 1923 [16–1–70, ACLA 1949].

16. Anchorage, Alaska, Code of Ordinances § 2–70 (1957).

17. Diederich v. American News Co., 10 Cir., 1942, 128 F.2d 144.

18. Ch. 42, SLA 1917.

19. Ch. 42, SLA 1927.

20. Ch. 69, SLA 1955 [68–2–8, ACLA Cum. Supp. 1957].

21. 1930, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177.

22. "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

23. Schick v. United States, 1904, 195 U.S. 65, 78, 24 S.Ct. 826, 49 L.Ed. 99, 105.

malum in se. The ordinance there being considered was somewhat broader than that of the City of Anchorage. In addition the maximum possible penalty provided was greater than that provided for in the Anchorage ordinance. That decision cites United States v. Hart [24] for the authority that reckless driving was an indictable offense at common law when horses, instead of gasoline, constituted the motive power. A study of the Hart case shows that the judge did, indeed, make such a statement in the opinion. The issue before the court, however, was whether or not the Marshal of Philadelphia was guilty of willfully retarding the passage of mail. The defense was justification in stopping the mail carriage under an ordinance of the city which subjected every person to a fine who should drive at an immoderate rate in the city, so as to endanger the citizens thereof, or who should drive a carriage on runners without bells to the horses. The court's comment that "driving a carriage through a crowded or populous street, at such a rate or in such a manner as to endanger the safety of its inhabitants, is an indictable offense at common law, and amounts to a breach of the peace" is interpreted as being no more than a statement that the Marshal's defense, if proved, would be sufficient. No authority for the statement is cited by the court. It is noted that the punishment prescribed for violation of the Philadelphia ordinance was a fine. No other authority has been drawn to the attention of this court holding that the reckless operation of horse drawn carriages was an offense of such a serious nature at common law that it could not be dealt with summarily without trial by jury.

Justice Sutherland in the Colts decision cites State v. Rodgers [25] for the proposition that reckless operation of a motor vehicle so as to endanger lives or property amounted to a public nuisance and was indictable at common law. While such a holding can be inferred, we are inclined to regard that case as also representing the doctrine that the New Jersey Legislature had the power to classify the offense of driving an automobile while intoxicated as a "disorderly act", triable before the Recorder without a jury, and as a holding that the nature of the charge determines the jurisdiction of the Recorder or magistrate. The fact that the entire evidence brought out at the trial disclosed that a more serious offense had been committed was no bar to prosecuting the accused on the original and lesser charge, the court held. The evidence disclosed that accused had not only driven while intoxicated, but had run the car through the saloon window and into the bar. The argument was that this constituted a common nuisance, indictable at common law, and that accused was entitled to trial by jury. Of interest is the fact that the court specifically found that driving an automobile upon a public street while intoxicated was not a common nuisance at common law. Of further interest is the comment of the court at 102 A. 436: "No doubt the Legislature wished to provide for punishment for those who drove motor vehicles upon the public streets while under the influence of intoxicating liquors without the delay necessarily incident to indictment and trial by jury". The holding in this case was later referred to with approval by the Supreme Court of New Jersey. [26]

No persuasive authority has been drawn to the attention of this court that reckless operation of a horse drawn carriage or a motor vehicle was an offense required to be tried by jury at common law.

We do not regard the offense of reckless operation of a motor vehicle as being one which must, in all of its possible aspects, be classed as malum in se, without exception, and requiring trial by jury in all instances. A motor vehicle can be a dangerous instrument. Its potential for damage and destruction to life and property is

24. C.C.Pa.1817, 26 Fed.Cas. page 193, No. 15,316.

25. 91 N.J.L. 212, 214, 102 A. 433 (Ct. Err. & App. 1917).

26. Town of Montclair v. Stanoyevich, 1951, 6 N.J. 479, 79 A.2d 288, 291.

great. On the other hand, its operation on the highways under generally lenient licensing and driver qualifications is perfectly legal. It would be not to face the facts of modern day living to hold that every instance of the operation of a motor vehicle in such a manner as to endanger the safety of persons and property, was an act motivated by an evil intent, even though the act may appear to have been done willfully, or to hold that every instance of operation without due caution at excessive speeds was the act of a depraved mind.

To argue that the result of reckless driving may be the commission of more serious crimes such as negligent homicide or manslaughter is beside the point. The same is true of assault and battery and many other petty offenses that are customarily tried in a summary manner. If other and more serious crimes are committed they can be prosecuted as such. This should be no bar to summary prosecution by a municipality for the commission of the less serious offenses.

 In determining whether the nature of the offense described is petty or a serious crime, this court has also considered the maximum possible penalty and was impressed by the reasoning of Mr. Justice Brewer in Schick v. United States: "The truth is, the nature of the offense, and the amount of punishment prescribed, rather than its place in the statutes, determines whether it is to be classed among serious or petty offenses,—whether among crimes or misdemeanors." 195 U.S. at page 68, 24 S.Ct. at page 827, 49 L.Ed. at page 101. This is not a new concept to Alaska. The late Judge Anthony J. Dimond, in considering the nature of municipal ordinance violations in 1948, stated:

"Moreover, it must be remembered that the offenses denounced by the ordinances of cities of Alaska are uniformly of a petty nature. The Legislature has provided that the maximum punishment which may be imposed for violation of any penal provision of a city ordinance is a fine of $100 or imprisonment in the municipal jail for thirty days, or both such fine and imprisonment. Those offenses are of such small consequence that no provision has ever been made for trial by jury in the municipal court, despite the trial by jury requirement of the Sixth Amendment." [27]

The quality of the offense and the consequences to the accused are the factors which determine whether there is a constitutional right to trial by jury. Where, as here, the violation is comparatively trivial in nature and not inherently evil, and the limited punishment that might be inflicted is not particularly severe, the benefit to the public resulting from a prompt and inexpensive trial and punishment is more important than the possibility of prejudice to the accused if he is not afforded a trial by jury. Thus, the balance of social convenience insists that there be summary treatment of this type of offense. This is the standard that is found from the body of common law experience in judging that an offense is petty and not triable of right by jury. We hold, therefore, that it was within the power of the City of Anchorage to provide for summary trial without a jury of the offense of reckless driving as defined in its ordinance.

It is noted, however, that the punishment imposed in this case was thirty days in jail, a fine of $300 and suspension of driver's license for a period of one year.

From 1923 to 1953 the maximum punishment that could be imposed by a municipal magistrate in Alaska, was a fine of $100 or imprisonment for 30 days, or both.[28] In 1953 an amendment increased the maximum fine which could be imposed to $300, made no change in the maximum imprisonment, increased the daily monetary allowance for

27. United States v. Farwell, D.C.D.Alaska 1948, 76 F.Supp. 35, 40, 11 Alaska 507, 517.

28. Ch. 97, SLA 1923, § 12, subd. 12.

working off fines and added the following new language:

"and provided further, that the council shall have the power to prescribe by ordinance, for the suspension of motor vehicle operators licenses or permits for violating of municipal ordinances relating to the use and operation of motor vehicles." [29]

The City of Anchorage subsequently enacted an ordinance to take advantage of the above amendment.[30]

However, in 1959 the first State Legislature enacted a comprehensive law covering the examining and licensing of motor vehicle operators and providing for the cancellation, revocation and suspension of licenses.[31]

Section 20(2) of this act provides:

"Every court having jurisdiction over offenses committed under this Act, or any other Act of this state or *municipal ordinance* regulating the operation of motor vehicles on highways, shall forward to the department a record of the conviction of any person in said court for a violation of any said laws other than regulations governing standing or parking, and may *recommend* the suspension of the operator's license of the person so convicted." (Emphasis ours.)

The act lists certain offenses for the conviction of which the department (Department of Public Safety) shall forthwith revoke operators' licenses and those offenses where suspension may be imposed after a hearing before a supervisory officer of the department. After such suspensions, hearings may be had on request in accordance with the Administrative Procedures Act.[32] Section 36 provides that certain enumerated sections "are hereby repealed as well as all other Acts or parts of Acts in conflict herewith".

Among the sections specifically repealed was section 50-3-2, ACLA 1949 providing that mandatory suspension shall be included in the penalty by every court upon the conviction of certain crimes, section 50-3-3, ACLA 1949 providing that the mandatory suspension of licenses should be in addition to other authorized punishment and should not be less than thirty days or more than one year and chapter 70, SLA 1953 providing for the issuance of permits to operate motor bicycles or motor scooters to minors. Substituted for the repealed sections are others more specific and comprehensive. Section 23(2) provides that after any suspension authorized by the act the licensee shall be afforded an opportunity for a hearing in accord with the Administrative Procedures Act. The right of appeal to a court is given by section 24.

Chapter 173 became effective on May 4, 1959 and plainly expresses the intent that all revocations and suspensions of operators' licenses be the act of the Department of Public Safety. All hearings and appeals resulting from any suspension are to be from the act of an officer of the department and be governed by a uniform procedure.

Where every court would have been required to suspend an operator's license as a part of the penalty under section 50-3-2, ACLA 1949 prior to its repeal, such courts under section 20(1) of chapter 173 are now merely required to forward the license to the department with a record of the licensee's conviction. Any act of revocation or suspension is performed by the department with licensee given a right to a hearing. Under section 20(2) *every court,* including those with jurisdiction over municipal ordinances regulating the operation of motor vehicles, must forward to the Department of Public Safety a record of all convictions and may *recommend* the suspension of the operator's license.

■ Thus, it is plain enough that under the provision above mentioned, the State

---

29. Ch. 44, SLA 1953, p. 110.

30. Ord. No. 1243, 12-4-56; Anchorage Code of Ordinances Sec. 19-196.

31. Ch. 173, SLA 1959.

32. Ch. 143, SLA 1959; Ch. 173, SLA 1959, §§ 22, 23.

District Magistrate in this case did not have the power to suspend appellant's operator's license. That court's duty under section 20(2) was merely to forward to the Department of Public Safety a copy of appellant's final conviction with a recommendation concerning suspension, if it so desired.

 It is our belief that the power of unlimited suspension of operators' licenses granted to municipalities by chapter 44, SLA 1953 is in direct conflict with the above-mentioned provisions of chapter 173, SLA 1959 and that that portion of chapter 44 reading:

"and provided further, that the council shall have the power to prescribe by ordinance, for the suspension of motor vehicle operators licenses or permits for violating of municipal ordinances relating to the use and operation of motor vehicles."

was repealed by section 36 of chapter 173, SLA 1959 as being one of "all other Acts or parts of Acts in conflict herewith".

 Petitioner particularly emphasizes in his briefs the argument that under the law he was entitled to a trial de novo in the superior court on an appeal and that this carries with it the right to trial by jury.

We are unable to agree with petitioner. On February 20, 1960, all courts of the Alaska Court System assumed their full jurisdiction and commenced to function.[33] As of that date a contradiction existed as to what would be the nature of the hearing on appeal from a subordinate court to the superior court. The act establishing the superior courts and defining their jurisdiction provided that the hearing on appeal would be on the record or trial de novo, in the discretion of the superior court judge.[34] The act establishing the district magistrate courts provided that appeals to the superior court would be trial de novo.[35] However, on February 21, 1960, an amendment to the latter mentioned act became effective, removing the contradiction and providing that such hearings be on the record, unless the superior court, in its discretion, should grant a trial de novo, in whole or in part.[36]

Since petitioner's notice of appeal was filed on February 26, 1960, the nature of the hearing to be accorded would be governed by the discretion of the superior court. That court violated no constitutional right of petitioner in denying him the right to trial by jury on appeal. He had no constitutional or statutory right to trial by jury when he originally appeared before the magistrate on a charge of violating the Anchorage ordinance in question. The fact that he has chosen to prosecute an appeal does not change the nature of the offense from petty to serious. The possible penalty is not increased. No additional constitutional or statutory right springs into existence on his appeal to give him a

33. Exec. Order No. 10867, Fed.Reg. Doc. 60–1733, February 24, 1960, 28 U.S.C.A. § 81A note.

34. Ch. 50, art. I, § 17(1) (a), SLA 1959 provides in part:
"Sec. 17. Jurisdiction and Venue. [Superior Courts.] * * * All hearings on appeal from any final order or judgment of a subordinate court or administrative agency shall be on the record unless the superior court, in its discretion, shall grant a tr'al de novo, in whole or in part." [Effective March 19, 1959.]

35. Ch. 184, art. I, § 20(3), SLA 1959, which established and defined the juris-

diction of the district magistrate courts of the state, provided:
"(3) Time for Appeal: Trial De Novo.
"Appeals shall be taken within thirty days from the date of entry of the judgment. All appeals shall be trials de novo." [Effective May 5, 1959.]

36. Ch. 5, § 3, SLA 1960 reads:
"(3) Time for Appeal: Trial de Novo.
"Appeals shall be taken within thirty days from the date of entry of the judgment. All appeals shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part." [Effective February 21, 1960.]

right to trial by jury. This likewise is no new concept.[37]

For the foregoing reasons the Order of the Superior Court judge denying petitioner the right to trial by jury is sustained. The case is remanded to the Superior Court for the Third District for further proceedings with the direction that the illegal sentence be corrected by striking therefrom that portion providing for suspension of appellant's operator's license.

37. See State of Minnesota v. Ketterer, 1956, 248 Minn. 173, 79 N.W.2d 136; City of Fort Scott v. Arbuckle, 1948, 165 Kan. 374, 196 P.2d 217; City of Albuquerque v. Arias, 1958, 64 N.M. 337, 328 P.2d 593.